# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1848, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } JUSTICES.
Hon. THERON METCALF,

---

## COMMONWEALTH vs. SAMUEL PARKER.

G. F. F., being summoned as the trustee of L. P., stated in his answer, among other things, that, from the proceeds of property placed in his hands by L. P., as security for the indebtedness of S. P., he had received a sum of money, which, in pursuance of a previous agreement between him and S. P., he had appropriated in part discharge of his demands against S. P., and that he had appropriated, paid over, or accounted to S. P. for, all the money so received by him: The supposed trustee being discharged as such, S. P. entered a complaint against him before the grand jury, for perjury in the above statement contained in his answer: On the investigation of this complaint, S. P. appeared and was examined as a witness, and, after having given a statement in detail of the transactions between him and G. F. F., testified, in answer to a question put to him by the district attorney, that there never was any contract or agreement between him and G. F. F. for the payment by him to the latter of any more than lawful interest on any of the transactions in evidence between them, in any shape or in any form: S. P. being indicted for perjury in thus testifying, it was held, that the evidence given by him was material to the inquiry before the grand jury.

Commonwealth *v.* Parker.

One summoned as trustee may discharge himself, by disclosing that he has appro priated the funds of the principal defendant in his hands, to the payment of money due him by such defendant, though the same be in fact due on a contract which is usurious; and, therefore, if a supposed trustee, having discharged himself by a statement of such appropriation, in his answer, without disclosing that the debt was due him on a usurious contract, is indicted for perjury in such statement, and the principal defendant, being examined as a witness in support of the charge, deny the existence of any contract between him and the supposed trustee, for the payment by him to the latter of any more than lawful interest, such testimony, if false, may be the subject of an indictment for perjury.

A witness having testified, that the defendant had told him, "that there was a house in Lowell, which had been his brother's, but that by some agreement, the defendant could have a deed of it any day, and that he would place it in the hands of the witness, as collateral security;" the defendant, with a view to contradict the witness, offered the evidence of his brother to prove, that the defendant had no interest in or control of the house alluded to; it was held, that the evidence was inadmissible, on the ground, that it did not tend to show what the defendant had or had not told the witness.

Where a copy of a paper is delivered to a party, and the original of the same is kept by the person delivering the copy, the original cannot be read in evidence, to affect the party, to whom the copy is delivered, with a knowledge of its contents, without notice being first given to the latter to produce such copy; and a sufficient ground being laid for the admission of a copy in evidence.

In order to authorize a conviction of perjury, it is necessary, in addition to the testimony of one witness to the falsity of the statement alleged as the perjury, that strong corroborating circumstances, of such a character as clearly to turn the scale, and overcome the oath of the party charged, and the legal presumption of his innocence, should be established by independent evidence: and, therefore, where the charge in an indictment for perjury was, that the defendant had testi fied, that no agreement for the payment by him of more than the lawful rate of interest had ever been made between him and a person to whom he was indebted, upon certain contracts: it was held, that the testimony of the creditor to the existence of such an agreement, corroborated by the letters of the defendant to him, containing a direct promise to pay more than legal interest on a demand then held by such creditor, if the payment could be delayed, and apologizing for a delay which had already taken place in the payment of another demand, and promising to pay a *bonus* for the delay, was competent and sufficient evidence of the falsity of the statement alleged as the perjury.

THE defendant was indicted and tried in the court of common pleas, before *Ward*, J., for the crime of perjury; and, being convicted, brought his case before this court, upon exceptions to the rulings of the judge at the trial.

It appeared from the evidence, as stated in the bill of exceptions, that, some time in the year 1841, an action was instituted in the court of common pleas, by Samuel Farrar against Lemuel Parker, and that George F. Farley was summoned therein as the trustee of the defendant. The supposed

trustee appeared and answered and was thereupon discharged. The defendant then entered a complaint before the grand jury, against Farley, for perjury alleged to have been committed by him in his answer as trustee; and the defendant appeared and testified in support of his complaint. The indictment in the present case charged the defendant with perjury in his testimony so given before the grand jury.

The facts, upon which this charge of perjury was predicated, so far as they are necessary to an understanding of the case, as presented in this court, will sufficiently appear by the following statement.

Previous to the commencement of the action, in which Farley was summoned as the trustee of Lemuel Parker, there had been various dealings and transactions between the defendant and Farley of a pecuniary character, in consequence of which the latter had become the creditor of the defendant to a considerable amount. In this state of things, the defendant, upon being pressed for payment, procured a conveyance of certain real estate in Lowell from Lemuel Parker to Farley, to be held and disposed of by the latter, as security for the defendant's indebtedness to him. This property was afterwards sold by an arrangement between the parties; and the proceeds, amounting to $579, after paying off the incumbrances, were paid over to Farley, to be appropriated by him to the credit of the defendant. A settlement subsequently took place between the defendant and Farley, which, it was asserted on the one side and denied on the other, embraced and absorbed the funds thus received from the sale of the real estate. The inquiry, which was the subject of the trustee process, was, whether the funds derived from such sale had been so absorbed or not; if, as Farley alleged, the whole sum had been absorbed by the settlement, he was not liable therefor as the trustee of Lemuel Parker; if not so absorbed, he was liable as such trustee, for whatever might remain after payment of the defendant's debt to him.

In his answer, as such supposed trustee, Farley stated, that in pursuance of a previous agreement between the defendant

and himself, he had appropriated the whole sum of $579, (with the exception of $20, paid directly to the defendant) in part discharge of demands which he had against the defendant; and he further used this language : " 1 know that I appropriated, paid over, or accounted to said Samuel for, all he money so received by me as aforesaid." This statement, .n reference to the appropriation of the $579, was the sub-.ect of the defendant's complaint against Farley, before the grand jury, for perjury.

In his testimony before the grand jury, relative to this complaint, the defendant made an elaborate statement as to the transactions between himself and Farley, for the purpose of showing that the proceeds of the real estate above mentioned were not included in the settlement. The acting district attorney, Edward Mellen, Esq., then put the following question to him : " Was there or not any contract or agreement between you and Farley for you to pay him more than six per cent on any contract or any of the contracts he has referred to ? " The defendant first said, in answer, that he did not see what that had to do with the subject; but, upon the question being repeated in substance, the defendant answered : " No, there was not." Mr. Mellen then inquired, " In any shape or in any form ? " and the defendant replied in the negative. He then went on to enumerate the items of the setlement, in order to show from what sources it was made up. .

The indictment against the defendant charged him with ꝑerjury in his answer to the question put by the district attorney, relative to the existence of any agreement between him and Farley for the payment of more than legal interest. The defendant made several questions in the course of the trial, upon which the court decided against him, which, with certain parts of the charge to the jury, were the subject of this bill of exceptions.

1. Upon the evidence introduced and relied on by the government, in order to show the materiality of the testimony alleged to be false, the defendant moved the court to direct an acquittal, on the ground, that the questions and

answers above stated were not material to the issue then before the grand jury. The court refused to allow this motion, but, after stating the facts, which the evidence tended to prove, ruled, that if these facts were true and proved, the questions and answers referred to were material. The statement made by the court, as appears by the bill of exceptions, was as follows: —

"That there was evidence tending to show, that between the years 1834 and 1841, inclusive, there had been pecuniary dealings between the defendant and Farley; that Farley had loaned to the defendant money for his own use, and had also loaned $1000, on a note signed by the defendant's brother, Lemuel Parker, as principal, and by the defendant and others, as sureties, which note, in or about the year 1834, the defendant undertook to pay, as appears by his letter, and which, in the year 1835, was paid by a mortgage from Jewett, one of the sureties; that in the year 1835, the defendant procured and delivered to Farley an absolute deed of a house in Lowell from Lemuel Parker, as security for the defendant's indebtedness; that the defendant, at sundry times, also delivered to Farley the notes of third persons as security; that in the year 1837, the house in Lowell was sold, and the net proceeds, $579, were delivered to Farley; that in the year 1841, a settlement took place between the parties (the defendant and Farley) and that Farley took the defendant's receipt in full of all accounts, and gave him about $62, as the balance then due to the defendant.

"There was also evidence tending to show, that on one or more of these loans, there was an extra interest or bonus paid or agreed to be paid by the defendant to Farley; that shortly after the settlement in the year 1841, a suit was brought by one Farrar against Lemuel Parker, in which Farley was summoned as Parker's trustee, for the $579, the proceeds of the house; that Farley, as trustee, made his disclosure under oath, in which he stated, that by previous agreement between himself and the defendant, Samuel Parker, "he had appropriated, paid over, or accounted for, all the proceeds of the

house ; " that upon filing the answer Farley was discharged, and that Samuel Parker, the defendant, thereupon laid a complaint before the grand jury against Farley for perjury, in falsely making such answer.

" The defendant, before the grand jury, testified that Farley had never appropriated, paid over, or accounted for the proceeds of the house, by any arrangement or agreement between them ; and, in order to confirm this, he exhibited to the grand jury a statement, in which no extra interest appeared, of all the demands and dealings between them, to show that all Farley's demands had been settled and paid from other sources ; and that there were no demands to which he could have appropriated this sum of $579.

" That there was also evidence tending to show, that including the extra interest or bonus agreed by the defendant to be paid, his indebtedness would absorb a part if not the whole of the $579, and the other sums received by Farley ; and that rejecting this extra interest, Farley would be indebted to Parker in the whole sum of $579.

" The defendant was then asked by the district attorney, whether or not there had not been an agreement between himself and Farley, by which he was to pay Farley extra interest or a bonus on any of these loans. To this the defendant answered in the negative. It was for his answer to this question, that the defendant was now on trial."

In charging the jury, at the close of the trial, the judge referred them to his ruling upon the motion above stated, for proper instructions as to the point of the materiality of the alleged perjury.

2. The government having called Farley as a witness, he testified, among other things, that the defendant told him that there was a house in Lowell, that had been his brother's, but that by some agreement, he (the defendant) could have a deed of it any day, and that he would place it in Farley's hands as collateral security. The defendant called Lemuel Parker, as a witness, and offered to prove by him, in contradiction of Farley, that the defendant had no interest in or

control of said house. This evidence being objected to, the court ruled that it was not competent for the purpose of contradicting the statement of Farley, it having no tendency to show what the defendant had or had not told him. The defendant thereupon urged that it was competent as tending to show, that in this respect the defendant had testified truly before the grand jury. But the counsel for the government then stated, that they did not rely on or intend to urge any falsity of the defendant upon this point. The court excluded the evidence.

3. The witness Farley having testified as to the settlement made in the year 1841, and how it was made, the defendant, in order to contradict and discredit him, called Lemuel Parker, who testified, that after Farley's discharge as trustee, he called on Farley, and, in conversation with him, told him that his statements about that settlement were not true, and that the witness could prove them to be false by two papers, which he (the witness Parker) had at home, but of which he had copies then with him; that he then handed to Farley a paper on which were these copies; that Farley took the paper and seemed to read it, and said he guessed that would not make much difference to any body; and that the paper was left with Farley.

· The witness then produced the two papers, which he said were the originals of the paper he had handed to Farley, and the defendant proposed to read them to the jury, but this was objected to, and the papers were submitted to the inspection of the court. One of them was found to be a receipt, which was already in the case, and this was admitted. The other was a certificate of a certain conversation, signed by one Coburn; and this was rejected, on the ground, that it was merely secondary evidence of the paper delivered to Farley by the witness; it not appearing that that paper had been lost, or that Farley had been called upon to produce it.

4. In order to prove the falsity of the words alleged as the perjury committed by the defendant, the government relied on one witness, and on certain letters and writings of the

defendant which were proved, and were also admitted to be his by his counsel. The testimony of this witness, (Farley,) as to the falsity of the defendant's statement, was as follows: " There was an agreement between me and Mr. Samuel Parker, that he should pay me a bonus or extra interest. This was on several demands. He agreed to pay me for raising the money for him, and when he came to owe me, he promised to pay extra interest for the delay." The contents of the letter relied on are stated in the opinion of the court. In charging the jury, the judge directed them, that, upon this point, (the falsity of the alleged perjury,) one witness, however credible, was not sufficient; but that the evidence of one witness, if believed by the jury, and strongly corroborated by letters or writings of the defendant, admitted to be his, would be sufficient to justify a conviction.

The above enumerated rulings and directions of the judge at the trial were the grounds of the defendant's exceptions.

The cause was continued *nisi*, at the October term, 1846, and was subsequently argued before the judges, at their chambers in Boston, by *J. Bell* and *T. Hopkinson*, for the defendant, and by *R. Choate* and *A. H. Nelson*, (district attorney,) for the commonwealth.

DEWEY, J. The defendant was indicted for perjury, in giving his testimony before the grand jury, on a complaint accusing George F. Farley of the like offence, alleged to have been committed by him in his answer as trustee, in an action instituted by Samuel Farrar against Lemuel Parker and George F. Farley, as his trustee. The jury having found a verdict against the defendant, the case now comes before us upon exceptions by him, to various rulings of the presiding judge at the trial.

In order to convict the defendant of perjury, it was necessary to establish the fact of the materiality of the testimony given by him, and also to show its falsity, by competent evidence. The sufficiency of the evidence, on each of these points, was denied by the defendant; and the judge before whom the trial took place was requested to instruct the jury

accordingly. These points have been fully argued before us; and, upon the questions thereby presented and various other points raised during the progress of the trial, the opinion of the court will now be stated.

1. As to the materiality of the testimony of Parker, which is alleged to be false. It must appear that the matter sworn to was material. But the materiality of the evidence must depend upon the nature of the question in issue. If the fact stated in the testimony was really foreign from the purpose, and had no bearing upon the point in issue, in the case on trial, such statement cannot authorize a conviction for perjury. But if it has a direct bearing, so far as to corroborate the evidence concerning the material matter, it is that species of testimony, which may involve the party in the crime of perjury; for its falsity is equally prejudicial to the party affected by it, and equally criminal, as if the matter stated had distinctly applied to the very point in issue.

It becomes necessary, therefore, to examine with particularity the precise question pending before the grand jury, and in reference to which the defendant was called to testify. The allegation made against Farley was, that he had sworn falsely and corruptly in his answer in the trustee case already alluded to. The testimony of the government shows distinctly, that the main point, in which perjury was imputed to Farley, was that arising under his answer, wherein he stated, that in pursuance of a previous agreement between Samuel Parker and himself, he had appropriated $579 (a sum of money which he had received as the proceeds of certain real estate) in part discharge of demands he had against Parker, (except about $20, which he paid over or accounted to him for, about the time he received the money,) and in the further statement "I know that I appropriated, paid over, or accounted to said Samuel for, all the money so received by me as aforesaid." The defendant alleges, and so testified, that no agreement was ever made by him with Farley authorizing the latter to apply the $579 so received, in discharge of any debts or liabilities of the defendant, and that in fact no such application was ever made.

The evidence tended to show an indebtedness from Samuel Parker to Farley, the amount of which was a subject of controversy, and that while such indebtedness continued, Samuel Parker procured and delivered to Farley a conveyance from Lemuel Parker to Farley, as security for such indebtedness, of a house in Lowell, and of a sale by Farley of the house, by means of which he realized $579, and of a subsequent settlement between the parties in the year 1846, which is alleged by the one party and denied by the other to have embraced the $579. This sum, and the question whether it had been duly accounted for, were the subjects of inquiry in the trustee suit, in which Farley was a party and made his sworn answers.

The defendant, in support of his complaint against Farley for perjury, testified that Farley had never appropriated, paid over, or accounted for, this sum of $579, in pursuance of any agreement between him and Farley. He denied that the $579 constituted any part of the settlement. He proceeded to state the items which constituted his indebtedness to Farley, obviously for the purpose of showing, that the entire amount of those items would be discharged without any application of the $579. In this state of the inquiry before the grand jury, the defendant was asked, " Was there not any contract or agreement between you and Farley for the payment of more than legal interest ? " After objecting to the question as irrelevant, and this not being a satisfactory answer to the inquiry, the defendant replied, " No, there was not." He was then asked, " In any shape or in any form ? " and he again replied in the negative. It seems very clear, that this evidence was material, and that the statement made was calculated directly to corroborate and sustain the position assumed by the witness upon the main point or issue. If no such agreement for extra interest existed, then the whole amount of Farley's demand might be demonstrated to have been fully discharged, independent of the $579 received from the sale of the house. If, on the other hand, the defendant had stipulated to pay large sums to Farley for usurious interest,

19 *

those sums might have exhausted the $579, or some considerable portion of it. The usurious interest, if such was promised to be paid, and if the funds had been placed in Farley's hands, as well to pay the unlawful as the lawful interest, would so much increase the demand of Farley, as materially to affect the amount which Parker might have stipulated, and which Farley says he did stipulate, to pay him. How far the circumstance, that the contract was an illegal one, and incapable of being enforced as an executory contract, presents any objection or affects the case, will be considered in another stage of the inquiry.

2. The question of more difficulty in the present case is that arising upon the other point, namely, the competency and sufficiency of the evidence relied upon to establish the falsity of the testimony given by the defendant. If we are to adopt the rule sometimes stated as the proper one upon this point, to wit, that there must be two witnesses swearing directly to the fact, this objection might be strongly relied upon.

A brief reference to a few leading authorities will clearly show, that this rule, if it ever existed, has been much qualified. The rule, as stated by Parker, C. J., in the case of *The Queen* v. *Muscot*, 10 Mod. 193, is as follows: "There is this difference between a prosecution for perjury and a bare contest about property, that in the latter case the matter stands indifferent; and therefore a credible and probable witness shall turn the scale in favor of either party : but in the former, presumption is ever to be made in favor of innocence ; and the oath of the party will have a regard paid to it, until disproved. Therefore, to convict a man of perjury, a probable, a credible witness is not enough ; but it must be a strong and clear evidence, and more numerous than the evidence given for the defendant ; for else there is only oath against oath." In the case of *Woodbeck* v. *Keller*, 6 Cow. 118, it is said, that if there be only one witness, and circumstances strongly corroborative, it is enough. In the case of *The State* v. *Hayward*, 1 N. & M'C. 547, it was held, that two witnesses are not

necessary to disprove the fact sworn to by the defendant; but when there is but one witness, some other evidence must be adduced in addition to his testimony. The rule, as stated by Mr. Greenleaf, 1 Greenl. Ev. § 257, is this: " The evidence must be something more than sufficient to counterbalance the oath of the defendant and the legal presumption of his innocence. But it is not precisely correct to say, that these additional circumstances must be tantamount to another witness. The same effect being given to the oath of the prisoner, as though it were the oath of a credible witness, the scale of evidence is exactly balanced, and the equilibrium must be destroyed by material and independent circumstances, before the party can be convicted: " — thus adopting the views of the court as held in 6 Cowen, above cited. The case of *The United States* v. *Wood*, 14 Peters, 440, has gone, perhaps, still further ; holding that no living witness, not even one, is absolutely requisite ; but that documentary or written evidence may be of such a character, as to produce that high degree of evidence, requisite to overcome the oath of the defendant and the presumption of innocence. The treatises of Phillips and Russell, 1 Phil. Ev. 115, and 2 Russ. 548, seem fully to sustain the general rule, that where there are corroborating circumstances, proved by independent evidence, the proof is sufficient. The case of *Rex* v. *Mayhew*, 6 C. & P. 315, seems to be quite analogous to the present, as to the point there settled, namely, that " even a letter, written by the defendant, contradicting his statement upon oath, would be sufficient to make it unnecessary to have a second witness."

Without extending these citations further, we may safely assume, that the rule requiring two living witnesses, in contradiction to the statement of the defendant, if it ever existed, nas long since been relaxed ; and that all that is requisite to a conviction of perjury is, that, in addition to one directly opposing witness, there should be established, by independent evidence, strong corroborating circumstances, of such a character as clearly to turn the scale and overcome the

oath of the defendant and the legal presumption of his innocence.

The legal principles adopted by the presiding judge, and the rule prescribed by him, in reference to this point, seem to have been well authorized, and in accordance with the best legal authorities, which we have for our guide. Upon this ruling, the further question was, and indeed that alone seems to present the only real ground for argument, on the part of the defendant, whether the letter ruled upon as corroborating evidence furnished the evidence, that would authorize the jury to find the defendant guilty. The only inquiry here seems to be, not whether the court 'would have given the same effect to the corroborating evidence that the jury have done, but whether there was competent evidence to authorize the finding of the jury.

The *letters of the defendant*, relied upon by the government, certainly corroborated the testimony of Farley, and contradicted that of the defendant, where he stated to the grand jury, that there was no agreement for the payment of more than legal interest in any shape or form. The letter of the defendant to Farley, of the 12th of July, 1834, contains a direct promise to pay more than legal interest, upon a demand then held by Farley, if the payment could be delayed. The letter of the 18th of August, 1834, after apologizing for not paying the note to Farley, during that week, says: " I conclude you are not very desirous to receive the amount immediately, if you get your *bonus*, which I will see done." Various other letters were read in evidence, bearing upon the fact of the indebtedness of the defendant to Farley, and upon the manner in which their dealings were conducted. The letters particularly referred to above would only apply to the money loaned before the 18th of August, 1834. All this evidence was submitted to the jury, and, under proper instructions as to the degree of evidence required to establish the falsity of the testimony given by the defendant before the grand jury, and in which the perjury was charged. In this state of the case, we do not feel authorized to set aside the

verdict, and grant a new trial for any error in respect to this point.

It was urged in the argument, that this alleged contract for the payment of usurious interest was illegal ; and, therefore, that if there had been an agreement on the part of the defendant to pay extra interest, it would constitute no valid contract ; and that, for this reason, it would not be perjury to deny wholly the making of such agreement, however false in fact the statement might be. The case of *Rex* v. *Dunston*, Ryan & Moody, 109, was cited to this point. How far this ground might have availed the defendant under other circumstances, and in a case like that cited, we do not decide. If it be true, that such contract would have been voidable as between the parties, and incapable of being enforced, and therefore the denial of it not a falsehood, and not material if made in reference to a claim or demand sought to be enforced as between such parties, that is not the present case ; nor does it settle the rule, as to the nature and effect of such a contract, in the case of a creditor seeking to avoid such usurious contract made by his debtor with a third person ; and much less that of a creditor seeking by the trustee process to withdraw money paid by his debtor upon a usurious contract. We apprehend, that under the trustee process, no creditor could require Farley to pay over to him any money actually paid the former as usurious interest, either by Samuel Parker or Lemuel Parker, whatever other penalties he might incur. As between such parties, the extra interest actually paid to Farley, under a usurious contract, might be properly stated as forming part of his demand, to which he had, with the consent of Parker, applied the proceeds of the sale of the real estate. Such application and payment, although upon a usurious contract, would discharge Farley from the trustee process. It was, in this view, a material inquiry, whether or not any such usurious agreement was made, and whether any demand of this character existed, which might increase the total amount of the demand of Farley, to which the $579 might have been applied ; and a false answer in relation to it

might therefore subject the defendant to punishment for perjury.

° The remaining points raised by the exceptions present no questions of difficulty, and may be more summarily disposed of.

3. The objection taken to the ruling of the judge, excluding the testimony of Lemuel Parker, that Samuel Parker had no interest in and was not the owner of the house sold, is one that is unavailing. The testimony proposed to be given had no tendency to contradict Farley, as Farley only testified as to the declarations of Samuel Parker to him about the title, and his authority to convey the same. For any other purpose than to contradict Farley, the testimony would be irrelevant, and it was, as we think, properly excluded.

4. The certificate of Coburn, offered in evidence as the original of a certain paper delivered to Farley by Lemuel Parker, was also properly rejected. No notice had been given to Farley to produce the paper in his hands, and no sufficient ground was shown for the admission of a copy.

The result, therefore, is, that all the exceptions are overruled, and that judgment must now be rendered on the verdict.*

---

* This verdict was afterwards set aside, and a new trial ordered, on the ground of newly discovered evidence; and on such trial, the defendant was acquitted.